Christian Kimmelman for Charles Campbell. Mr. Campbell asked this court to vacate and reform the judgment imposing a 17 and a half year sentence under the Armed Career Criminal Act. The ACCA enhancement was based on two Texas robbery convictions and two Texas burglary convictions and neither offense is now a violent felony after the Supreme Court's decisions in Samuel Johnson and Welch. Either the robbery or burglary inquiry would be dispositive because Mr. Campbell has two of each and for the ACCA enhancement there must be three predicate offenses. And I will first address the robbery offense. Now this was under a former version of the Texas robbery statute article 1408 and that is different than the current Texas Penal Code 29.01 that the court's familiar with from various cases including the recent decision in Burris. The current statute requires causing bodily injury or threatening or placing in fear of bodily injury but that is not an element of article 1408 robbery the basis for Mr. Campbell's convictions. That statute defines one offense of robbery that can be committed in three different ways. Robbery is the taking from the person or possession of another any property with the intent to appropriate to his own use by assault or violence or by putting in fear of life or bodily injury. And the Texas Court of Criminal Appeals has held that those three different ways are just that. Their ways means that the offense can be committed not elements. And so under the categorical approach the court needs to look to the minimum conduct that is criminalized by article 1408 to determine whether that minimum conduct necessarily has a force element and the answer in this case is no. Assault one of the ways that the robbery can be committed is defined in the Texas statute as any unlawful violence upon the person of another with intent to injure him whatever be the means or the degree of the violence used. And that injury could be bodily pain but it could also by statute be constraint, a sense of by a body part but also by anything else capable of inflicting the slightest injury or by any means such as spitting in the face. And so this type of minimal force is not what is contemplated by the Armed Career Criminal Act physical force element which requires violent force capable of causing physical pain or injury to another person. This court has noted that spitting on someone does not require violent force as contemplated by the ACCA. And Texas case law also not only reiterates it can be a slight injury and it can be any degree of force but it has examples that demonstrate that through some pickpocketing cases where the amount of force is essentially offensive touching, putting a hand in the victim's pocket, reaching around the victim. In some instances another person holds the another party takes the money out of the pocket. And so those cases do not rise to a slap in the face, do not constitute physical force that could cause even a bruise which is not enough to be violent force under the Armed Career Criminal Act. How much was the enhancement? So the ACCA enhancement makes a 15 year mandatory minimum. If that hadn't been imposed the statutory max would have been 10 years. And when did that 10 years expire? Probably three years ago, three or four years ago. Mr. Campbell has already served that time and he is set to be released in August of next year. He has a little over a year left. And then of course the ACCA enhancement has a five year supervised release whereas without the enhancement there's a three year max of supervised release that would apply to Mr. Campbell. So if he's released tomorrow, which supervised release would control? The three years? The three years, the three years would control. And could he be arrested for committing a crime during the supervised release period? I don't believe that the court would be able to impose prison at that time. We had a similar case on Monday. Correct, right. And I also don't believe Mr. Campbell would be one who would be likely to recommit. He's in rather poor health right now and 67 years old. No more robbing, no more burglaries? No more robberies or burglaries. Those are in the past. The government raises a timeliness argument on the robbery claim. I'll just address that briefly. Mr. Campbell filed his motion for authorization within a year of Johnson. The claim clearly relies on Johnson and the citing to the current Supreme Court law either on the categorical approach or on the physical force definition is completely proper and doesn't render the claim untimely. Those cases interpreted the statute. That's what the statute has always meant. There are old rules that should apply on the merits and the Supreme Court has applied current case law to, for example, the prejudice prong of the Strickland inquiry. If there are no other questions on robbery, I'll turn to burglary. Again, Mr. Campbell can get relief simply on the burglary. Sorry, on either, but certainly on the robbery inquiry. The burglary has some more procedural hoops that have been criticized by the government and in some other courts of appeals. This court on Bonk recently held that Texas burglary is no longer a generic burglary offense. So if Mr. Campbell was sentenced today, it wouldn't qualify. Now the question is, does the court have jurisdiction to consider that claim? Since this is a successive 2255, Mr. Campbell has to pass through two gates in order to get to that merits inquiry. And so the first gate is the authorization to file the successive 2255. He did timely file that. The general claim was that he's no longer an ACCA based on the residual clause, the court granted authorization, and then it goes to the district court to proceed on that. Wasn't the sentencing court explicit that the burglary conviction was assigned under the enumerated offense clause? At the time of sentencing, the sentencing court did specifically say that. And so that gets to the next inquiry of whether or not Mr. Campbell's claim relies on Johnson when the sentencing court at the time of sentencing said it was an enumerated offense. In our position, that is that the claim does rely on Johnson. First, because he wouldn't have any relief if Johnson didn't exist. Even if the Fifth Circuit decided, Harold, if the residual clause was still constitutional, he would be, well, absent the robbery inquiry, but those burglary convictions would be violent felonies under the residual clause. And so Johnson is a necessary part of his claim to that the burglary convictions are no longer supported. Two burglary convictions? Is it two that he has? Correct. He has two burglary convictions. And so the 2255 statute and 2244 require that the claimant relies on Johnson, but it doesn't require exclusively relying on Johnson, that only that it's a part of, necessary part of the claim, and it certainly is for Mr. Johnson. And I believe the burden that Mr. Campbell has to show, because it is his burden on the 2255, is that the residual clause supported the violent felony determination at the time of sentencing, and it did. The sentencing court specifically said enumerated clause does, but the court didn't find that the residual clause didn't, and the Fifth Circuit case law at the time of Mr. Campbell's 2007 sentencing certainly supported a finding that the Texas burglary was a violent felony under the residual clause offense. And those cases first start with Guardado, 1994. There might be an earlier one also. But in Guardado, addressing 16b, residual clause, the court explained that whenever a private residence is broken into, there's always a substantial risk that force will be used. And then a few years later, in 1998, the Fifth Circuit held in Claiborne that, and this was for an unauthorized entry offense, that that was a residual clause of offense under the career offender, the 4b1.2 definition of crime of violence, which is the same residual clause at issue in the ACCA. And it explained, homeowner's surprise confrontation with an intruder is laced with the potential for violence, regardless of whether the intruder is a burglar or merely an unauthorized entrant. And then just a few months before Mr. Campbell was sentenced, the Supreme Court decided James, which addressed another robbery, excuse me, burglary conviction, and said that the main risk of burglary arises from the possibility that an innocent person might appear while the crime is in progress. And so that case law supports that Mr. Campbell's burglary offenses at the time of his sentencing were violent felonies under the residual clause. And I would submit that it would be unfair and is certainly not required by the statute to hinge his access to relief simply on what the district court said or did not say at the time of sentencing. And that's because it's not necessary, first of all, for the district court to specify which definitional clause makes an offense a violent felony. And — It makes a big difference whether there's some sort of sentence that's unclear, if the court is unclear. Certainly. And this Court was pretty clear. This Court was clear, but the court also was not clear that it's not a residual clause. And there's nothing in the ACCA that says a violent felony can only — Well, if it says I'm using the enumerated offense clause, that means you're not using the residual clause. True. But why should it matter what the district court said, particularly when this is in the context of the entire life of a case, which includes appellate review? And, for instance, if a district court were to find that an offense is an enumerated clause offense, and — or like in Welch, the district court in Welch says both. It is enumerated, or maybe it was elements, and it is residual clause. And then he appealed, and the appellate court said, we think it is residual clause. And they didn't address the other definitional clause. They just said it is residual clause. So in the end, for Welch, the appellate court did rely on the residual clause, but not necessarily to the exclusion of the other clause. And the Supreme Court in Welch did not indicate in any way that Mr. Welch might lose on jurisdictional grounds or might only win and pass through those gates because of what the appellate court found. And I know district courts work very hard to get answers right, but they don't always get answers right. And that's evident, actually, in the Lawrence-Taylor case where this court addressed what standard to apply and decided not to formally adopt a standard yet. In that case, the sentencing court was not specific at the time of sentencing, but at the time of the 2255 said, I didn't rely on the residual clause. And this court still held that in the relevant legal context at the time, it was indicating that really that offense, I think it was Texas injury to a child, is only going to be a violent felony under the residual clause. So the district court was incorrect, but that doesn't mean it necessarily is going to change the defendant's ability to get relief. And a rule like that would result in similarly situated defendants having different access to this relief to their unconstitutional sentences. Yesterday, another panel heard a case, WESA, in which the sentencing court was unclear about whether those Texas burglary offenses were under the enumerated or the residual. And so if this court was to adopt a standard that simply relied on what the sentencing court said, you know, perhaps Mr. WESA would win and Mr. Campbell would not have relief, even though it's the same Texas burglary offenses in successive 2255 postures. And so we believe that the correct standard is what has been laid out by the Fourth Circuit that could, may have the conviction relied on the residual clause. Looking at the law, not necessarily looking at what a district court said or had in his or her mind at the time of sentencing. And with that, that's how Mr. Campbell meets his burden on that, to pass through those two gates relying on the new constitutional rule made retroactive and then ultimately getting to the merits, which, you know, with Harold's interpretation of the categorical approach now being applied to Texas burglary, means that those offenses as well are not violent felonies. I understand the government is asking for cert for that. We would oppose stay should the court ultimately get to that issue. If you win on the robbery conviction argument, we don't need to get to the burglary. Correct. Thank you. Thank you, sir. Mr. Gay? Good morning. May it please the court. Joseph Gay from the Western District of Texas. Well, this is a unique case where changes in precedent have outstripped the briefing virtually at every stage of the case. When we started this case, burglary was well settled as an enumerated crime of violence under ACCA. I don't think any opinion ever looked at it in any other way. By the time Johnson came out, we had authority still that eventually under Uribe that was overruled by Harold. We are, of course, litigating Harold, seeking cert at the Supreme Court. And then on the eve of this oral argument, on June 18th, a opinion issued from a panel of this court basically undercutting Texas robbery to the extent that it was the current robbery statute and not the 1925 statute that's at issue in this case. The crux of the analysis there, the Curtis Johnson quantum of force analysis, I believe is equally applicable to our robbery case here. I don't see much of a way to distinguish it. Although the government strongly disagrees with the reasoning in Burris, and on August 3rd is going to be filing a petition for rehearing in that case, there is a dissent from Judge Ho that's mentioned in the opinion that has not been issued. So we're not even exactly sure what the precedential landscape is going to look like. And so at the end of the day, we are once again in a position where we're essentially fighting a changing landscape. In this case, I believe, Judge Clement, you are correct, that if, in fact, robbery is dispositive, I do not believe you will have to address the lengthy analysis of whether the Mathis-DeCamps-based challenge is cognizable in a successive 2255. Does the government agree that robbery, that the defendant should be successful in the robbery argument? I'll phrase it this way. If this court finds that it is bound by the Burris decision, which would be binding precedent on this panel, I believe the proper remedy in the rule of orderliness that this court must follow is to remand for resentencing. Even though it's a different version of the statute? Well, I believe that's to the extent that you find that you are bound. As I mentioned, Curtis Johnson, the quantum of force analysis employed by the panel in Burris, I believe would be equally applicable to the 1925 statute as it is to the present day statute. I don't see a meaningful, believe me, I've looked and tried, but I don't see a meaningful way to circumnavigate around that quantum of force analysis. I do want to stress that we disagree with that analysis, and we stick by the briefing that we have already filed in this case. But I do believe that we have this problem, and maybe at some point, depending on what the dissent looks like and what this panel decides, maybe having the parties an opportunity to even discuss this new case and do the analysis would be appropriate. But at this point, if it stays the way it is, I have trouble viewing Curtis Burris as not being an obstacle for us in this robbery context. And so this is a challenging case. I understand that time here, we've asked for a stay in light of Harold. We would be asking again for some sort of an abeyance, at least until we see what happens with Burris as far as what the dissent perhaps says. Maybe that changes our view of the case. But certainly this Court is, I think, in a difficult procedural posture with Burris. If it's controlling presidential authority, and you find that it is, I do believe that at that point a remand for resentencing would be appropriate. I don't believe the Court should reform the judgment. I believe that it has to go back, that the district court needs to impose a term of imprisonment, which would be, of course, the statutory maximum at this point. He has served roughly 16 years of a 17-and-a-half-year sentence. And if, logically, if this were to take its normal course, even if we get en banc in Burris, it would be set sometime this fall, resolved sometime in the spring if we lost in Sat-Cert, certainly Mr. Campbell would have served the remaining 12 months that are there. So I think the briefing in this case, and by the way— It would have been his enhanced sentence, his total enhanced sentence. His total enhanced sentence. So it's sort of much to do about nothing for Mr. Campbell. It would be at that point, except for the five-year term of supervision. And so right now there are, I think, four cases working their way presently, all kind of linked together, maybe five. One case that was set this week was Stewart, but it was an initial 2255, was not a successive, and so the analysis differs there. But we have Weiss, this case Campbell, and another brief that's been filed that wasn't set for argument this term, this week, was a case called Ricks. And all of them are going to be looking at this gatekeeping function that this court has regarding what we call Mathis-DeKamp claims. Harold is clearly based on Mathis and DeKamp, and the gatekeeping function. And so in those cases, that analysis is very important. Here, I think that robbery, this is the only case that presents this particular wrinkle, in the sense that there is an alternative problem in the case. In other words, for example, Weiss was just pure burglary. There were no other convictions, and so therefore the issue was squarely presented. In our case, we have burglary and robbery, and so therefore it's a bit more complicated. But at the end of the day, we have argued in our brief, I think quite persuasively, that the timeliness function and the gatekeeping function of successive 2255 requires that the right being asserted fall under a retroactively applicable case. Harold is not that case. DeKamp is not that case. And Mathis is not that case. And so therefore, we believe that at the time of sentencing, and I would like to say that this case is also somewhat unique because the district court judge specifically says, I find robbery under the residual clause, making that very clear, and he finds burglary under the enumerated clause. And so it was unlike some of the other cases where there's ambiguity. In this case, it is very clear. And so at the end of the day, I think that we are in a situation where precedent has outstripped the briefing, and we are at this point going to rely on the briefing that we have in place, although as to Burris, it may be incomplete. So should we stay this case until Burris is resolved either by the en banc court? That would be the government's request, Your Honor. I think that I recognize that we had asked for a stay based on Harold, which was denied, and we asked, and as a further wrinkle, this court is about to reconsider its entire Castleman doctrine in September in en banc, and we asked for a stay in that case as well because that has huge implications for the analysis of robbery also. Assuming that Burris, there were multiple affronts, I think, attack lines, so to speak, in robbery. We had the Castleman angle, which the Fifth Circuit is a minority view until now, and perhaps after the en banc that will change to be more of a consensus view of what Castleman means in this circuit. And, of course, now we have this Curtis Johnson analysis as well. So there's definitely all of this is in flux. So at this point, we believe, number one, that the burglary Harold-based challenges are not cognizable before this court in a successive 2255. We believe the robbery claims are, to be quite frank. The district court stated they were under the residual clause, and therefore they are ripe for consideration by this court. We believe there is ample authority suggesting that prior to Burris, robbery was still a violent felony under ACCA. We've briefed that issue. However, Burris, I believe, changing the analysis under Curtis Johnson, addressing the quantum of force necessary, I think erodes. It's the first case in this court to hold that robbery is not broadly a violent felony under ACCA. And I don't, at this point, see a meaningful way to distinguish between the current version of robbery and the 1925 version. If there are no further questions, I'll yield back. Thank you, Mr. Gabbard. Ms. Campbell, you have five minutes of rebuttal. Thank you, Your Honor. The government really doesn't want Mr. Campbell to get out. We've already had two stays. Now the government mentions a third stay, given Burris and the intention to file a petition for a rehearing, I presume on Bonk, that we definitely oppose that. Burris, as I already addressed, deals with the current robbery statute, and specifically with the causing bodily injury element of the robbery statute. That's not even an element of 1408. It doesn't require the causing of bodily injury. It requires the direct application of force, or at least can be violated that way, through the assault or the violence ways of committing robbery. And the force that's required is minimal. And that is clear under Curtis Johnson, and it's clear under Castleman. And Burris doesn't change the quantum of force that this Court has been applying. It says Castleman didn't change it, but the government actually said in its petition for rehearing in Reyes-Contreras that Castleman doesn't change the degree of force that is required. There are two different issues, the degree of force and there's the indirect versus direct application of force. And the indirect versus direct application of force is what this Court is going to consider in Reyes-Contreras on Bonk. But that, as I argued in my opposition to the stay based on Reyes-Contreras, does not come into play for Mr. Campbell in his Article 1408 robbery conviction. So Burris and the Texas Penal Code 29.01 are materially different. And, you know, if the Court, if the government files a stay, we'll certainly oppose that, but don't think that a stay is required under Burris. The government also tries to recharacterize Mr. Campbell's burglary claim as Mathis or de Camp claim. I explained that the claim necessarily depends on Johnson, and that is an essential part of him obtaining relief. And Mr. Campbell has received good time credit. His offense was in February 2004, so he's been in custody for that amount of time, a little over 14 years. And any amount of prison time is significant, and the Supreme Court has recognized that even changing sentence, the possibility of changing sentences by days matter, and this Court should not delay addressing Mr. Campbell's 2255 petition. And we ask that the Court exercise its authority to vacate and also to reform the judgment and have his immediate release. Thank you. Thank you, Your Honors. Thank you.